A02A2157. PETZELT et al. v. TEWES et al.
(581 SE2d 345)

RUFFIN, Presiding Judge.

Philip Petzelt sued Patricia Tewes, M.D. and Northside Anesthesiology Consultants, LLC ("Tewes") for compensatory and punitive damages, alleging that Tewes, an anesthesiologist, committed battery, breach of fiduciary duty, and medical malpractice.[1] Petzelt's battery and breach of fiduciary duty claims were based, in part, on his allegation that Tewes had fraudulently obtained his consent to perform certain medical procedures. Tewes moved for partial summary judgment on the latter claims, arguing that there was "no evi-

---

[1] Petzelt's wife, Sandra Petzelt, also asserted a claim for loss of consortium.

dence that Dr. Tewes made any false statements to Mr. Petzelt or that she intentionally misled or deceived [him] for the purpose of obtaining his consent." Tewes also sought summary judgment on Petzelt's claim for punitive damages. The trial court granted Tewes' motion, and the remaining claims of malpractice and battery for exceeding the scope of consent were tried by a jury. The jury returned a verdict of $1,500 on Petzelt's battery claim and found for Tewes on Petzelt's medical malpractice claim and his wife's loss of consortium claim. The Petzelts now appeal the trial court's grant of partial summary judgment, and for reasons that follow, we reverse.

Petzelt contends that the trial court erred in granting summary judgment to Dr. Tewes on his claim that she fraudulently obtained his consent to perform the medical procedures by assuring him that his referring orthopedic surgeon, Dr. Edwards, was fully aware of and approved of her treatment plans for him. Petzelt further asserts that the trial court should have allowed his punitive damages claim to go to the jury based on his fraud claim.

1. On appeal from the trial court's grant of partial summary judgment, we conduct a de novo review.[2] We "construe the evidence and all reasonable inferences therefrom in the light most favorable to [Petzelt] as the nonmovant. Summary judgment in favor of [Dr. Tewes] is appropriate only if there is no genuine issue of material fact concerning [Petzelt's] claim[s]."[3]

Viewed in this manner, the evidence shows that Dr. Edwards referred Petzelt to Dr. Tewes for treatment of his lower back, specifically for a nerve block to determine whether his pain was caused by a herniated disk. Dr. Tewes performed the procedure, but it did not alleviate Petzelt's pain. Dr. Tewes thus recommended that Petzelt proceed with facet blocks, a different procedure designed to determine whether his pain arose from degeneration in his lumbar facet joints. Petzelt told Dr. Tewes to "discuss [it] with Dr. Edwards and whatever you two decide [he would] be happy to go along with."

When Petzelt returned to Dr. Tewes for the facet blocks, Tewes told him she had been unable to contact Dr. Edwards by telephone, but that she had kept him advised. Petzelt told Dr. Tewes that he was concerned about her not having spoken with Dr. Edwards. According to Petzelt, Tewes "repeated over and over and reassured [him] that she had sent [Dr. Edwards] communications and that [Dr. Edwards] was aware of everything that was being done and that he had been advised. And she said this over and over again to get [Petzelt] to consent to the procedure." Petzelt agreed, and Dr. Tewes then adminis-

---

[2] See *Hindmon v. Virgil's Food Mart*, 252 Ga. App. 732 (556 SE2d 135) (2001).
[3] Id. at 732-733.

tered three facet blocks on the left side of Petzelt's lower back, which alleviated some of Petzelt's pain.

Dr. Tewes later followed up with Petzelt concerning a continuing treatment plan. Tewes explained to Petzelt that he could undergo another set of facet blocks or he could proceed with a radio frequency denervation, a longer-lasting treatment. Petzelt again told Dr. Tewes to discuss the matter with Dr. Edwards and that he would go along with whatever the two of them decided.

Petzelt subsequently returned to Dr. Tewes for the denervation procedure. Petzelt signed a consent to treatment form, on which the words "facet block/denervation" were circled, and next to that was a handwritten, circled "L." Petzelt testified that Dr. Tewes came into the pre-op room and told him she had not been able to contact Dr. Edwards. Petzelt attempted to call Dr. Edwards himself, but the office had not yet opened and he was unsuccessful. Petzelt testified that Tewes then came back into pre-op and

> started reassuring me again, over and over again, Mr. Petzelt, you do not need to worry, Dr. Edwards is completely aware of everything that we've done — I have sent him . . . notes on everything that I have done, he is fully aware. Now when someone tells me that, I believe them. And I consented to let her go ahead based on her lies.

According to Dr. Tewes, Petzelt was crying, severely distressed, in severe pain, and wanted to proceed with the denervation.

Dr. Tewes performed the denervation procedures on the left side of three lumbar facet joints, and then began to work on Petzelt's right side. Petzelt instructed her to stop because he only wanted the treatment on his left side, so Tewes stopped, having already performed the procedure in two locations on the right.

Petzelt testified that these procedures gave him no pain relief, but instead exacerbated his pain. He remained bedridden for a week with increasing pain; then his right leg began swelling. After Petzelt developed further complications, he learned that Dr. Edwards was unaware of Dr. Tewes' course of treatment.[4] This lawsuit followed.

As a general rule, if a person consents to undergo a medical procedure, the physician cannot be liable for battery unless the consent was not freely obtained or was obtained by fraud.[5] In a case of fraud,

---

[4] It is undisputed that Dr. Tewes never spoke with Dr. Edwards concerning the treatment, and Edwards testified that he never received any treatment notes from Tewes. Although Dr. Edwards' actual testimony apparently is not included in the record, Dr. Tewes acknowledged this testimony in her summary judgment brief.

[5] See *Harris v. Tatum*, 216 Ga. App. 607, 608 (1) (b) (455 SE2d 124) (1995); see also *Campbell v. Breedlove*, 244 Ga. App. 819, 822 (1) (535 SE2d 308) (2000) ("Consent is not valid if it was obtained by fraudulent misrepresentations of material facts.").

if the physician fails to respond truthfully to a patient's questions about a diagnosis or treatment, the patient's consent may be vitiated.[6]

To establish fraud, a plaintiff must produce evidence showing a "[w]illful misrepresentation of a material fact, made to induce [the plaintiff] to act, upon which [the plaintiff] acts to his injury."[7] Although knowledge that the representation is false is an essential element of fraud, a

> reckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood *even if the party making the representation does not know that such facts are false.* A misrepresentation is intended to deceive where there is intent that the representation be acted upon by the other party.[8]

And, because

> fraud is inherently subtle, slight circumstances of fraud may be sufficient to establish a proper case. Proof of fraud is seldom if ever susceptible of direct proof, thus recourse to circumstantial evidence usually is required. Moreover, it is peculiarly the province of the jury to pass on these circumstances showing fraud. Except in plain and indisputable cases, scienter in actions based on fraud is an issue of fact for jury determination.[9]

The evidence in this case is not plain and indisputable. Petzelt claims that Dr. Tewes recklessly misrepresented to him that Dr. Edwards was fully aware of Tewes' treatment plans. Although evidence shows that Dr. Tewes sent Dr. Edwards her treatment notes, this evidence did not necessarily permit Tewes to assume that Edwards received copies of the notes, that he read the notes, and that he was fully aware of the treatment plans.

As a threshold matter, the evidence that Dr. Tewes sent the notes to Dr. Edwards is not compelling. Specifically, the evidence shows merely that the notes contain the words "cc: Christopher Edwards, MD." Even though this text indicates that Dr. Tewes

---

[6] See *Albany Urology Clinic v. Cleveland*, 272 Ga. 296, 301 (3) (528 SE2d 777) (2000).

[7] OCGA § 51-6-2 (a); see also *Plane v. Uniforce MIS Svcs. of Ga.*, 223 Ga. App. 731, 734 (2) (479 SE2d 18) (1996).

[8] (Citations and punctuation omitted; emphasis supplied.) *Plane*, supra; see also OCGA § 51-6-2 (b).

[9] (Citations and punctuation omitted.) *Lloyd v. Kramer*, 233 Ga. App. 372, 373 (1) (503 SE2d 632) (1998).

intended to send a copy of the notes to Dr. Edwards, Tewes testified that she merely dictated the notes and did not personally send them to Edwards. In fact, Dr. Tewes testified that she did not know who was responsible for sending copies to the individuals listed as "cc." Instead, Dr. Tewes merely assumed that the notes were sent to Edwards because it was a policy to "have the medical records office send the records." Even if such evidence would be admissible as habit or routine,[10] considering the lack of any direct evidence that the notes were actually sent, in addition to the evidence that Dr. Edwards never received the notes, a jury could find that the notes were never sent.

Moreover, even if Dr. Tewes reasonably assumed that the notes had been sent, a jury could still find that she was reckless in repeatedly telling Petzelt that Dr. Edwards was *fully aware* of the procedure she was about to perform. Under the circumstances of this case, the implications of Tewes' reassurances, even if well intended, were significant. Petzelt was obviously distressed about the procedure, and he wanted to ensure that Dr. Edwards concurred with Dr. Tewes' suggested treatment. Although Tewes testified in her deposition that "[t]here's no way" she could have known whether Dr. Edwards received the notes, a jury could conclude that her unequivocal reassurances to Petzelt informed him that she knew for a fact that he had not only received them, but also read them. And, considering that the evidence must be viewed in a light most favorable to Petzelt, a jury could infer that Dr. Tewes misrepresented to Petzelt that Dr. Edwards had acquiesced to her treatment plan. That is a reasonable inference if the jurors consider that Dr. Edwards purportedly knew all about Tewes' treatment plan, yet failed to object to the procedure before it was performed.

Under these circumstances, a jury could find that Dr. Tewes pretended to know, as a matter of fact, that Dr. Edwards had seen her notes, that he was fully aware of the proposed treatment, and that he acquiesced in the treatment, when, in fact, Tewes did not actually know any of this to be true and it was not true.[11] And, considering that Tewes made the misrepresentation to Petzelt to quell Petzelt's objections as he waited in pre-op, a jury could also find that Tewes intended to deceive him.[12] Thus, the trial court erred in granting

---

[10] See *Brown v. DeKalb Med. Center*, 225 Ga. App. 4, 5 (1) (482 SE2d 511) (1997).

[11] See *Stinson v. Artistic Pools*, 236 Ga. App. 768, 769 (2) (513 SE2d 510) (1999) ("'[r]eckless representation of facts as true without knowledge is actionable as a species of fraud without scienter'"); *Plane*, supra; *Leatherwood v. Boomershine Motors*, 53 Ga. App. 592, 593 (186 SE 897) (1936) ("'a reckless or fraudulent representation about that which the party pretends to know, but about which he knows that he does not know, and by which false pretense his purpose and intent is to deceive,'" is fraud).

[12] See *Plane*, supra.

Tewes' motion for summary judgment on Petzelt's claim that his consent was induced by fraud.[13]

2. Because there is evidence from which a jury could find that Dr. Tewes was culpable of fraud, the trial court also erred in granting her motion for summary judgment on Petzelt's claim for punitive damages.[14]

*Judgment reversed. Barnes and Adams, JJ., concur.*

DECIDED MARCH 28, 2003 —
RECONSIDERATION DENIED APRIL 10, 2003 — ▆▆▆▆▆▆

*Weinstock & Scavo, Michael Weinstock, Andrew J. Coomes*, for appellants.

*Love, Willingham, Peters, Gilleland & Monyak, Vicki M. McGinty, Randolph P. Powell*, for appellees.

---

[13] See id.

[14] See *Lloyd,* supra at 375 (2); *Carco Supply Co. v. Dick Clem, Master Plumber, Inc.*, 194 Ga. App. 566, 567 (6) (391 SE2d 134) (1990).