IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 23, 2004 Session

## MICHAEL K. HOLT v. C. V. ALEXANDER, JR., M.D., and JACKSON RADIOLOGY ASSOCIATES

**An Appeal from the Circuit Court for Madison County**
**No. C99-410     Donald H. Allen, Judge**

—————

**No. W2003-02541-COA-R3-CV - Filed January 13, 2005**

—————

This is a medical battery case. The plaintiff went to the hospital suffering from a kidney stone, and was admitted for observation. The next morning, the plaintiff was told that he was scheduled to undergo a procedure to remove the stone. Soon, the defendant physician came to see the plaintiff and told him that he would be performing an invasive procedure which required significant recovery time. According to the plaintiff, the plaintiff then asked the defendant physician whether his treating urologist had approved of the procedure. The defendant physician responded that he had spoken with the urologist and that the urologist had approved the procedure. The plaintiff then signed a consent form, and the procedure was performed. The plaintiff later learned that the defendant physician had not spoken with his urologist, and that the urologist did not approve the procedure. The plaintiff sued the defendant physician and his medical group for medical battery. The trial court granted summary judgment in favor of the defendants. The plaintiff now appeals. We reverse, finding that a genuine issue of material fact exists as to whether the plaintiff's consent to surgery was vitiated by the defendant physician's alleged misrepresentation of fact.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Everett B. Gibson, Memphis, Tennessee, for the appellant, Michael K. Holt.

Floyd S. Flippin and Paul B. Conley, III, Humboldt, Tennessee, for the appellees, C. V. Alexander, Jr., M.D., and Jackson Radiology Associates.

**OPINION**

Plaintiff/Appellant Michael K. Holt ("Holt"), about 37 years old at the time of the incident in question, had a history of recurring kidney stones.[1] He suffered his first kidney stone at age thirteen, and his parents brought him to a medical clinic for treatment. Holt was given medication for the pain, and a few days later, he passed the stone without any further medical intervention. After he was 24 or 25 years old, Holt had at least three additional bouts with kidney stones. Each time he had a kidney stone "attack," he would go to the hospital and be given intravenous ("IV") fluids and pain medication. Then he would be sent home and would pass the stones without further medical intervention. He was not admitted to the hospital on any of these prior occasions, nor was he subjected to any medical procedures to treat the kidney stones.

On Sunday, November 29, 1998, Holt suffered another kidney stone attack. His wife took him to Jackson Madison County General Hospital ("the Hospital"). Holt was treated and released with the hope that he would again pass the kidney stone without surgical intervention.[2] He said he was told that the kidney stone was very small, and that he was expected to pass it as he had in the past. Instead, the pain continued and increased, so Holt went back to the Hospital that evening. Holt was admitted to the Hospital under the care of his regular urologist, John Henning Meriwether, M.D. ("Dr. Meriwether"). Although Dr. Meriwether was the admitting physician, he did not meet with Holt at the Hospital at that time. Holt believed that he was being admitted solely for the purpose of the administration of IV fluids and pain medicine. No further procedures were discussed at the time of his admission.

The next morning, Holt was taken from his Hospital room to the x-ray room. He was x-rayed, then moved to a different room. When Holt asked what he was doing there, Holt was told, "[T]hey're going to do the procedure on you." He asked what procedure, and he was told that the physician would explain.

Shortly thereafter, Defendant/Appellee C.V. Alexander, Jr., M.D. ("Dr. Alexander"), whom Holt had never met, entered the room. Dr. Alexander told Holt that the kidney stone had to be removed immediately and that he (Dr. Alexander) would have to go in and perform a procedure called a percutanous nephrostolithotomy, or a stone manipulation. This is an invasive surgical procedure in which the surgeon inserts a needle in the patient's back and, through the needle, inserts a device to manipulate the stone and physically remove the stone from the patient's body. The procedure requires the administration of an anesthetic and four to five days in the hospital following the surgery. According to Holt, Dr. Alexander briefly explained the procedure, and he did not have an opportunity to ask him any questions. Holt said he told Dr. Alexander that he would only do what

---

[1]Kidney stones are solid pieces of material that form in the kidney. They can "pass" by natural means, which means they can travel on their own toward the bladder and down the urinary tract, or they must be treated by performing other procedures, one being a stone manipulation.

[2]Holt stated that, in the past, the Hospital would give him morphine for the pain. On this occasion, however, he was given Dilaudid, which was less effective at controlling the pain.

Dr. Meriwether told him to do, and Dr. Alexander replied that "he had talked to him [Dr. Meriwether], and he okayed this procedure."[3] In any event, Holt signed the consent form presented by Dr. Alexander.

Dr. Alexander then performed the stone manipulation on Holt. After the surgery, Holt was in considerable pain and remained in the Hospital for about a week. He had a tube coming out of his back draining down his leg. When the tube was removed a stent was placed in his urinary tract that caused him discomfort and pain. The pain had subsided by the first part of January 1999.

It was later discovered that Dr. Meriwether did not, in fact, order the stone manipulation for Holt. Early on the morning of November 30, 1998, a hospital secretary made an erroneous entry into the hospital's computer system indicating that Dr. Meriwether had ordered Dr. Alexander to perform a stone manipulation on Holt. When Dr. Alexander arrived at the Hospital for work that morning, he received the erroneous order for Holt's stone manipulation. Dr. Alexander reviewed Holt's x-rays and determined that the requested procedure was justified. He then met with Holt, informed him of the risks, benefits, and steps of the procedure, and obtained Holt's consent to perform the stone manipulation.

It is undisputed that Dr. Alexander did not speak with Dr. Meriwether prior to performing the stone manipulation on Holt, and that Dr. Meriwether was unaware of it until he arrived at the hospital later that morning and saw Dr Alexander performing the stone manipulation on Holt. Holt would subsequently say that Dr. Meriwether later told him that he never would have ordered the procedure, and that it "never should have been done."

On November 29, 1999, Holt filed this lawsuit against Dr. Alexander, his medical group, Defendant/Appellee Jackson Radiology Associates ("Jackson Radiology"), and the Hospital. Holt alleged that the defendants committed medical malpractice by obtaining his consent to the stone manipulation procedure without giving him adequate information and by performing the procedure on him under those circumstances. 4The complaint did not include a claim for medical battery.

On February 24, 2000, Dr. Alexander and Jackson Radiology filed a motion for summary judgment on the allegations in the complaint. On May 10, 2001, the trial court entered an order granting the motion for summary judgment on all claims of medical malpractice other than the issue of informed consent. Later, Holt settled his claims against the Hospital, and the complaint was dismissed as to the Hospital on November 4, 2002.

On April 1, 2003, Dr. Alexander filed a renewed motion for summary judgment on Holt's lack of informed consent claim.[4] In that motion, counsel for Dr. Alexander informed the trial court

[3]Dr. Alexander denies that he made this statement to Holt.

[4]It does not appear that Jackson Radiology joined in the motion. However, the arguments and positions taken on behalf of Dr. Alexander apply with equal force to Jackson Radiology.

that he had received a letter from counsel for Holt indicating that Holt intended to rely entirely on a claim for medical battery, not lack of informed consent.[5] On the same day, Dr. Alexander filed a renewed motion for summary judgment on Holt's anticipated medical battery claim, arguing that the facts were undisputed and that he was entitled to a judgment as a matter of law.

On July 17, 2003, Holt filed a motion for leave to file an amended complaint to include a cause of action for medical battery. On July 18, 2003, the trial court heard oral argument regarding Dr. Alexander's motion for summary judgment and Holt's motion to amend his complaint. At that hearing, counsel for Dr. Alexander told the trial court that Dr. Meriwether had testified in his deposition that he would have approved the procedure for Holt in any event "because of the size of the stone and the location."[6] Hearing that, the trial court reasoned, "if that's the case, then obviously there's no dispute because Mr. Holt said, 'Well, I would have gone through this procedure had I known Dr. Meriwether had approved it, you know.' " Consequently, the trial court determined that "I think – I can listen to all the proof, I would probably grant – I feel confident that I would grant judgment on behalf of Dr. Alexander in this case. . . . [I]t just doesn't appear that there's really any dispute as to any material facts in this case." On that basis, the trial court granted Holt's motion to amend, but contemporaneously granted summary judgment in favor of Dr. Alexander and Jackson Radiology on Holt's claim of medical battery. On September 10, 2003, the trial court entered an order consistent with its oral ruling. From that order, Holt now appeals.

On appeal, Holt argues that the trial court erred in granting summary judgment in favor of Dr. Alexander and Jackson Radiology on his claim of medical battery, because genuine issues of

_____

[5]A copy of that letter, dated March 24, 2003, was included in the record on appeal. The parties agree that Holt thereafter abandoned his lack of informed consent claim and proceeded only on his claim of medical battery.

[6]Dr. Alexander does not make this assertion on appeal. In Dr. Meriwether's deposition, he is asked whether there was anything wrong with Dr. Alexander, after seeing the hospital document showing that Dr. Meriwether had ordered a stone manipulation for Holt, performing the procedure without talking to Dr. Meriwether. Dr. Meriwether replied, "Absolutely nothing wrong with that." The following exchange then takes place:

Q. Well, I want you to take into account everything that you knew on Monday morning plus everything that you have learned since Monday morning about this particular case. Do you have any criticism at all of Dr. Alexander for performing this stone manipulation procedure on Mr. Holt?

A. Dr. Alexander was doing exactly what he would have normally done under the normal every day routine. Nothing would have been outside of the ordinary from Dr. Alexander's standpoint in this case.

Q. You have no criticisms at all of him?

A. No criticisms at all.

At no point, however, is Dr. Meriwether asked in his deposition whether he would have approved the stone manipulation for Holt had he been asked. Since Dr. Alexander does not point to a place in the record where Dr. Meriwether makes such a statement, we do not consider it in his appeal.

-4-

material fact exist regarding that claim. He argues that, viewing the facts in a light most favorable to him, a jury could conclude that his signature on the consent form was based on a material misrepresentation of fact and, therefore, was a nullity. In response, Dr. Alexander argues that there is no evidence of circumstances that would nullify Holt's consent to the procedure. Dr. Alexander maintains that, in any event, Holt's claim is actually a case based on lack of informed consent. Since Holt had no expert testimony to support his claim of lack of informed consent, summary judgment in favor of Dr. Alexander and Jackson Radiology was appropriate.

We review the trial court's grant of summary judgment *de novo* with no presumption of correctness. **Warren v. Estate of Kirk**, 954 S.W.2d 722, 723 (Tenn. 1997). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We must view the evidence in a light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. **Warren**, 954 S.W.2d at 723 (quoting **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn. 1997)). Once the moving party demonstrates that no genuine issues of material fact exist, the non-moving party must demonstrate, by affidavits or otherwise, that a disputed issue of material fact exists for trial. **Byrd v. Hall**, 847 S.W.2d 208, 211 (Tenn. 1993).

While Holt has elected to pursue only his claim for medical battery, Dr. Alexander insists that Holt's cause of action is actually based on medical malpractice and lack of informed consent, which requires expert testimony regarding the applicable standard of care. **See Blanchard v. Kellum**, 975 S.W.2d 522, 524 (Tenn. 1998). In **Blanchard**, the Tennessee Supreme Court set out a clear distinction between a claim of medical battery and a medical malpractice informed consent claim. The Court said:

> We believe that there is a distinction between: (1) cases in which a doctor performs an unauthorized procedure; and (2) cases in which the procedure is authorized but the patient claims that the doctor failed to inform the patient of any or all the risks inherent in the procedure. Performance of an unauthorized procedure constitutes a medical battery. A simple inquiry can be used to determine whether a case constitutes a medical battery: (1) was the patient aware that the doctor was going to perform the procedure (i.e., did the patient know that the dentist was going to perform a root canal on a specified tooth or that the doctor was going to perform surgery on the specified knee?); and, if so (2) did the patient authorize performance of the procedure? A plaintiff's cause of action may be classified as a medical battery only when answers to either of the above questions are in the negative. If, however, answers to the above questions are affirmative and if the plaintiff is alleging that the doctor failed to inform of any or all risks or aspects associated with a procedure, the patient's cause of action rests on an informed consent theory.

*Id.* Thus, under the "simple inquiry" test, the court must ask whether the plaintiff was aware that the specific procedure was going to be done and whether the plaintiff authorized the procedure. If

either question is answered in the negative, then the claim is one for medical battery. The *Blanchard* Court explained that, in an informed consent case, expert testimony is necessary, because "a court must consider the nature of the medical treatment, extent of the risks involved and the applicable standard of care" in determining whether the information provided to the patient was adequate. *Id.* However, expert testimony is not mandated in a medical battery case because "the primary consideration is whether the patient knew of and authorized a procedure. This determination does not require the testimony of an expert witness." *Id.*

In the instant case, Dr. Alexander argues that Holt actually asserts lack of informed consent because (1) Holt knew that Dr. Alexander was going to perform the stone manipulation procedure on him, and (2) Holt clearly authorized the procedure by signing the consent form. Therefore, Dr. Alexander argues, because both questions of the "simple inquiry" test are answered in the affirmative, this is not a medical battery case. *See id.* In response, Holt concedes that he knew that Dr. Alexander was going to perform the stone manipulation procedure on him, but argues that the signed consent form is a nullity because he was induced into signing it under false pretenses. He claims that, to induce him into signing the consent form, Dr. Alexander told him that he had spoken with Dr. Meriwether and that Dr. Meriwether approved of the procedure. In his deposition, Holt said that when Dr. Alexander told him that it was necessary for him to do a stone manipulation, he asked if Dr. Meriwether had ordered the procedure:

> [Holt]: I said [to Dr. Alexander], "I haven't seen my doctor."
> And [Dr. Alexander] said, "Well, I've talked to Dr. Bicknell, and Dr. Bicknell ordered the procedure."
> I said, "Dr. Bicknell is not my doctor," and my exact words I remember very clearly, because I will not let Dr. Bicknell treat me. That, "If I have any say-so in this matter whatsoever, I will not do what Dr. Bicknell says. Dr. Meriwether is my doctor, and I will only do what Dr. Meriwether tells me to do."
> So Dr. Alexander then said, "Oh, oh, that's right. I've talked to him, and he okayed this procedure."
>
> [Question]: "Talked to him," being Dr. Meriwether?
>
> [Holt]: Implying Dr. Meriwether.

Thus, Holt argues, Dr. Alexander's alleged misrepresentation that he had spoken with Dr. Meriwether and that Dr. Meriwether "okayed" the procedure was the reason he reluctantly signed the consent form. Because Dr. Alexander had in fact not spoken to Dr. Meriwether and Dr. Meriwether had not approved the procedure, Holt argues, his consent was a nullity.

In support of his position, Holt relies on *Church v. Perales*, 39 S.W.3d 149 (Tenn. Ct. App. 2000). In *Church*, the court cited *Blanchard*'s explanation of the difference between a claim based on medical battery and one based on lack of informed consent. *Church* went further, however, and stated that a signed consent form raises a presumption that the patient has consented to the procedure

"in the absence of proof of misrepresentation, inadequate disclosure, forgery, or lack of capacity." ***Church***, 39 S.W.3d at 161. The court observed that when "no evidence competently undermines the validity of that consent, the surgery is not a battery." ***Id.*** at 161-62 (footnote omitted). Holt argues the negative inference from that statement, that where there *is* evidence to undermine the validity of the plaintiff's consent, then the claim is one for medical battery. In this case, he argues, there was evidence of a misrepresentation sufficient to rebut the presumption of consent from the signed consent form. In fact, he argues, the evidence is undisputed that Dr. Alexander did not speak to Dr. Meriwether prior to the procedure, and that Dr. Meriwether did not give an order for the procedure. When the evidence is viewed in a light most favorable to him, Holt argues, a jury could find that his consent was based on a misrepresentation and, therefore, was a nullity.

Dr. Alexander correctly asserts that a signed consent form shows that the plaintiff was aware that the surgery was going to take place. ***See, e.g., Harris v. Buckspan***, 984 S.W.2d 944, 949-50 (Tenn. Ct. App. 1998). The signed consent form, however, raises only a presumption of consent to surgery. A claim for medical battery can be established if it is shown that the physician intentionally or recklessly misrepresented a material fact in order to obtain the patient's signature on the consent form, thus vitiating the patient's consent. For example, in ***Petzelt v. Tewes***, 581 S.E.2d 345, 347 (Ga. Ct. App. 2003), the plaintiff consented to a "denervation" procedure to alleviate pain in her back, based on the defendant physician's representation that the patient's orthopedic surgeon was "fully aware" of everything the defendant physician was doing. ***Id.*** at 346-347. In reality, the defendant physician had dictated notes indicating a "c.c." to the orthopedic surgeon, but had no idea whether the orthopedic surgeon had either received or reviewed the notes. It turned out that the orthopedic surgeon was unaware of the defendant physician's course of treatment of the plaintiff. ***Id.*** at 347-348. The appellate court found that the jury could conclude from the evidence that the defendant physician had misrepresented to the plaintiff that the orthopedic surgeon had acquiesced to her treatment plan for the plaintiff. ***Id.*** at 348. Under these circumstances, the plaintiff's consent to the medical procedure "may be vitiated." ***Id.*** at 347; ***see also Duncan v. Scottsdale Med. Imaging, Ltd.***, 70 P.3d 435, 440 (Ariz. 2003) (en banc) (holding that although consent to injection was given, consent was obtained by misrepresentation and, thus, was invalid).

In the instant case, Holt submitted his own testimony that Dr. Alexander represented to him that he had spoken to Dr. Meriwether before the surgery and that Dr. Meriwether approved of the procedure. In fact, Dr. Alexander admits he did not talk with Dr. Meriwether, and he later discovered that Dr. Meriwether did not order the procedure. This claim is not one of lack of informed consent, where the physician "failed to inform [the patient] of any or all risks or aspects associated with a procedure." ***Blanchard***, 975 S.W.2d at 524. According to the Restatement of Torts:

> If the person consenting to the conduct of another is induced to consent by a substantial mistake concerning the nature of the invasion of his interests or the extent of the harm to be expected from it and the mistake is known to the other or is induced

by the other's misrepresentation, the consent is not effective for the unexpected invasion or harm.

Restatement 2d Torts 892B(2) (1979), *quoted in* **Duncan**, 70 P.2d at 440. Under comment h of the Restatement, a patient adversely affected by the misrepresentation may either bring an action for misrepresentation or "treat the consent as invalid and maintain any tort action open to him in the absence of consent." Where a signed consent form raises the presumption of valid consent, and the plaintiff claims that his consent was vitiated by "misrepresentation, inadequate disclosure, forgery, or lack of capacity," a claim for medical battery is stated and expert testimony is not necessary to prove such a claim. **Church**, 39 S.W.3d at 161.

In this case, Holt states a claim for medical battery, insofar as his consent to the medical procedure was based on Dr. Alexander's alleged misrepresentation. As such, expert testimony was not required to establish his claim. Holt's testimony regarding Dr. Alexander's alleged misrepresentation was sufficient to create a genuine issue of material fact with respect to the validity of his consent. Thus, the trial court erred in granting summary judgment on Dr. Alexander's behalf at this juncture.

The decision of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this Opinion. Costs on appeal are to be taxed to Appellees C. V. Alexander, Jr., M.D., and Jackson Radiology Associates, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE