**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/**

**November 20, 2012**

# In the Court of Appeals of Georgia

A12A1045. CHOATE CONSTRUCTION COMPANY v. AUTO-  JE-048
OWNERS INSURANCE COMPANY.

ELLINGTON, Chief Judge.

In this suit on payment and performance bonds, general contractor Choate Construction Company ("Choate") appeals from the grant of summary judgment in favor of surety Auto-Owners Insurance Company ("AOIC"). Choate contends that the trial court erred in finding that, because the bonds named a principal that was a different company than the subcontractor it had hired, it could not collect on the bonds. For the following reasons, we reverse.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant."

(Citations and punctuation omitted.) *White v. Ga. Power Co.*, 265 Ga. App. 664, 664-665 (595 SE2d 353) (2004). So viewed, the record shows the following facts.

In November 2008, Choate entered into a contract with the Board of Regents of the University System of Georgia for the construction of fraternity and sorority housing at the University of Georgia. It hired Dedmon Electrical Services ("Dedmon") as an electrical subcontractor on the project, which the subcontract referred to as "Greek Park." Under the subcontract, Choate required Dedmon to furnish payment and performance bonds. Choate gave bond forms to Dedmon's owner, Thad Dedmon, to be completed and returned to Choate before Dedmon began its work on the project. After contracting with Choate, Dedmon opened an account with, and purchased materials for the project from, Atlanta Electrical Distributors, Inc. ("AED"); Thad Dedmon personally guaranteed payment on the account.

In January 2009, Dedmon began work on the project, even though it had not yet provided the requisite payment and performance bonds to Choate. The next month, Choate received payment and performance bonds that had been issued by AOIC, as the surety, and that identified the principal as "D. E. S. Electrical Contractors" ("DES"); Jacqueline Payne had signed the bonds as the owner of DES. The bonds also identified Choate as the "Obligee," stated that the obligee had a contract with the "Bd.

2

of Regents[,] Univ. System of Georgia for the construction of Greek Park," described the services to be provided under the principal's subcontract with the obligee as "Electrical Installations," gave the date and the value of the subcontract, and referenced and incorporated the subcontract. Although neither Dedmon nor Thad Dedmon was named on the bonds, a Choate office employee wrote "Dedmon Electric" at the top of the performance bond. Choate did not confirm that DES and Dedmon were, in fact, the same company, nor did it contact Dedmon, Thad Dedmon, DES, Payne, or AOIC to inquire about the discrepancy between the name of the principal on the bonds, DES, and the name of the company with which Choate had the subcontract, Dedmon. Instead, based upon the assumption that the bonds covered Dedmon's services under the subcontract, Choate allowed Dedmon to continue working on the project. Dedmon eventually defaulted on the subcontract with Choate and failed to pay its account with AED.

Choate filed a claim with AOIC on the bonds, but AOIC refused to pay, asserting that neither DES, the named principal on the bonds, nor Payne, who signed the bonds as the owner of DES, were parties to the electrical subcontract between Dedmon and Choate, nor had they otherwise contracted with either Choate or AED. According to AOIC, Payne applied for the bonds as the "Owner" of DES under the

3

surety's "Quick Bond Program." Under that program, AOIC offers bonds for qualified individuals or contractors with projects that take less than a year to complete and that have a total value of work of less than $250,000. Because of the limitations on the time and value of the prospective project, AOIC does not require a bond applicant to provide the underlying contract as part of his or her application, because the contract is "not relevant to the applicant's bondability[.]" The record shows, however, that on Payne's application for the bonds, she stated that the underlying contract was with "Choate Construction Company," that the contract was dated "01/17/2009," and that the contract price was "$231,960.64." Further, under "Job Description," the application stated "UN of GA/Greek Park/Athens, GA[,] Installation of electrical components per drawings." This information essentially matches the information on the subcontract between Choate and Dedmon.

In November 2009, AED filed suit against Choate, Dedmon, Thad Dedmon, DES, Payne, AOIC, and others, claiming damages for failure to pay on an open account, breach of contract, liability on the surety bonds, quantum meruit and unjust enrichment, and attorney fees. Choate asserted a cross-claim against AOIC and "D. E. S. Electrical Contractors, Inc. a/k/a D. E. S. Electrical Contractors a/k/a Dedmon

4

Electric Services a/k/a Dedmon Electrical Services," asserting breach of contract and claims for contractual indemnity and under the payment and performance bonds.

In March 2010, the trial court entered a default judgment against Thad Dedmon on AED's claims. AED then dismissed its claims against Payne, settled its claims against Choate, and assigned to Choate its remaining claims against Dedmon, DES, and AOIC. Choate filed a motion to realign the parties by substituting it as the named plaintiff and AOIC, Thad Dedmon, and "Dedmon Electrical Services a/k/a D. E. S. Electrical Contractors" as the defendants. AOIC objected to the motion, asserting that Dedmon and DES were separate companies with no legal relationship. Choate and AOIC also filed cross-motions for summary judgment.

Following a motion hearing, the trial court granted summary judgment to AOIC, finding, inter alia, that the bonds were unambiguous in their identification of the principal as DES, the surety as AOIC, and the obligee as Choate. Further, it found that Choate had failed to present any evidence that Dedmon and DES were the same entity or that Thad Dedmon and Payne were ever involved in the same company. The court concluded that AOIC was not liable on bonds that identified DES as the principal and that, as a result, AOIC was entitled to summary judgment.

5

1. On appeal, Choate contends that the trial court erred in finding that AOIC was not liable on the bonds as a matter of law, arguing that the evidence, when viewed in its favor, was sufficient to create a jury issue as to whether Dedmon and DES were the same business entity for the purpose of the bonds on the subcontract. Further, Choate argues that any ambiguities in the identity of the bond principal should be construed most strongly against the surety, AOIC.

"[A] contract involving a compensable surety is construed most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect." (Citation, punctuation, and emphasis omitted.) *Growth Properties of Florida v. Wallace*, 168 Ga. App. 893, 896 (1) (310 SE2d 715) (1983).

> [W]hen the fact of suretyship does not exist on the face of the contract, the parties involved are permitted to either prove or disprove the existence of a suretyship relationship. The question is an evidentiary one and its proper resolution requires that facts be submitted to the fact finder to determine what was the intent of the parties. The cardinal rule of contract construction is to ascertain the intention of the parties. The question of the intention of the parties in this case is properly for the jury.

6

(Citation and punctuation omitted.) Id.[1]

The undisputed evidence shows that Payne somehow gained possession of the bond forms Choate had given to Thad Dedmon for bonding Dedmon's work on the subcontract, then used those forms when she applied with AOIC for the bonds. Payne's bond application and the bonds themselves identified the distinct project that was the subject of Dedmon's subcontract with Choate, stated the date of and the amount to be paid under the subcontract, and identified Choate as the obligee on the bonds. In fact, the bonds specifically referenced and incorporated the subcontract.[2]

Further, the transcript of the summary judgment hearing shows that, while AOIC's attorney was arguing that it should not be liable on the bonds because the bond principal, Payne, had no contract with Choate nor any involvement with the

---

[1] See also *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 104-105 (1) (661 SE2d 578) (2008) (To satisfy the Statute of Frauds, a contract of guaranty must sufficiently identify the principal debtor. However, while the Statute of Frauds prohibits using parol evidence to identify the principal debtor if that term is completely missing from the contract, it does not prohibit using parol evidence to resolve ambiguities as to the identity of the debtor. Thus, because the written guaranty at issue identified the principal debtor as the "customer," parol evidence was admissible to help resolve any ambiguity as to whom that term referred.).

[2] See *Goldman v. Vinson*, 244 Ga. App. 815, 817 (1) (535 SE2d 305) (2000) ("As a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where the provision to which reference is made has a reasonably clear and ascertainable meaning.") (footnote omitted).

7

project, the trial court interjected and asked, "How did Jacqueline Payne ever get involved in this?" AOIC's attorney responded, "To be absolutely candid with the Court[,] . . . the agent [processing the bonds for AOIC] apparently wrote the bonds fraudulently. I assume for the benefit of Thaddeus Dedmon[,] the agent had Jacqueline Payne, who was an elderly woman, sign the contracts, pay the premium, and incur the . . . debt. That agent is currently in jail." The attorney also stated that, before issuing the bonds, AOIC

> ran the credit of Jacqueline Payne. That's why the bond was issued. Thaddeus Dedmon didn't have any credit. That's why he didn't apply for a bond. It's that simple. If [AOIC] had had a chance to look at [the credit history of] Mr. Dedmon, they may have issued a bond, they may not have, probably would not have. And that's the reason why Jacqueline Payne was there.

It is axiomatic that "[a]dmissions of fact, made by a party's counsel during a hearing or trial, are regarded as admissions in judicio and are binding on the party." (Punctuation and footnote omitted.) *Hollberg v. Spalding County*, 281 Ga. App. 768, 774-775 (2) (b) (637 SE2d 163) (2006). See OCGA § 24-3-33 ("Admissions by an agent or attorney in fact, during the existence and in pursuance of his agency, shall be admissible against the principal."). Although AOIC argues on appeal that its

8

attorney's statements arose from mere speculation on his part and do not constitute admissions of fact to which it should be bound, the attorney's statement that he was being "absolutely candid" with the trial court seriously undermines that argument. Moreover, while the attorney characterized certain facts as assumptions on his part, he affirmatively and unambiguously stated that the only reason AOIC's agent had Payne, "an elderly woman," apply and pay for the bonds and incur the debt was because Thad Dedmon was unlikely to qualify for the bonds himself.

We agree with Choate's contention that the evidence, when viewed in its favor, presents jury questions as to whether Dedmon and DES were the same company and/or whether Payne acted as an agent or "on behalf of" Dedmon when she procured the bonds.[3] See *Growth Properties of Florida v. Wallace*, 168 Ga. App. at 896 (1). We

---

[3] See OCGA § 10-6-1 ("The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf."); see also *Southeastern Exposition Mgmt. Co. v. Genmar Indus.*, 250 Ga. App. 702, 704-705 (551 SE2d 830) (2001) ("Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. The existence of agency and the extent of the agent's authority are questions of fact. A claim of agency may be proved, as any other fact, by circumstantial evidence. The fact of agency may be established by proof of circumstances, apparent relations, and the conduct of the parties. Direct evidence of an agency relationship is not required. The threshold for showing agency in this context is low, and even scant factual support may suffice.") (punctuation and footnotes omitted).

9

note that, although the record also contains the affidavit of an AOIC assistant manager stating that Thad Dedmon did not apply to AOIC for bonds for the project at issue and that AOIC never communicated with Thad Dedmon about Payne's bond application, such evidence simply presents a conflict in the evidence that the jury must resolve. See *Sweet Water Tree Farm v. J. Frank Schmidt & Son*, 287 Ga. App. 455, 457 (1) (a) (651 SE2d 787) (2007) (material discrepancies between two versions of the same document created a conflict in the evidence that required jury resolution).[4]

Therefore, we conclude that the trial court erred in finding that there was no evidence to create a jury question on these issues and in granting summary judgment to AOIC on that basis.

2. Choate also contends that, even if there was no evidence to show that Dedmon and DES were the same company or that Payne acted on behalf of Dedmon when obtaining the bonds, the evidence presented a jury question on whether the AOIC agent intentionally wrote the bonds "fraudulently." Choate argues that, as a

---

[4] See also, generally, *Mitchell v. Calhoun*, 229 Ga. 757, 760 (1) (194 SE2d 421) (1972) (Where material information about the defendant's alleged fraudulent transaction rests exclusively within the knowledge of the participants to such fraud, so that the plaintiff has no means successfully to meet the facts alleged in an affidavit by the defendant in which he denies such fraud, then the defendant's affidavit, standing alone, does not entitle him to summary judgment.).

10

result, AOIC was not entitled to summary judgment, because Georgia law prevents a surety from benefitting from such fraud in order to avoid its obligations on the bonds. See *American Manuf. Mutual Ins. Co. v. Tison Hog Market*, 182 F3d 1284 (11th Cir. 1999) ("*Tison Hog*").[5]

> To establish fraud, a plaintiff must produce evidence showing a willful misrepresentation of a material fact, made to induce the plaintiff to act, upon which the plaintiff acts to his injury. Although knowledge that the representation is false is an essential element of fraud, a reckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood *even if the party making*

---

[5] In *Tison Hog*, a surety issued performance bonds naming the owner of two livestock companies as the principal so the companies could purchase hogs from several livestock sellers. 182 F3d at 1286 (I). When the companies failed to pay for the hogs, the sellers sought to collect on the bonds. Id. During an investigation, the surety learned that the bond applications, which contained indemnification agreements, were signed by the owner of the companies, but they also contained the forged signatures of two other people who had purportedly agreed to indemnify the surety. Id. at 1286-1287 (I). The surety brought an action seeking a declaratory judgment relieving it from liability on the bonds, claiming that the forged signatures constituted fraud that rendered the bonds void ab initio. Id. at 1287 (I). The trial court ruled that the bonds were void ab initio due to fraud and granted summary judgment to the surety. Id. On appeal, the Circuit Court ruled that, under Georgia common law, "a surety is still liable to a creditor even if the principal commits fraud so long as the creditor does not participate in the fraud." (Citations omitted.) Id. at 1290 (III). Because the evidence showed that the fraud was committed solely by the principals and there was no evidence that the livestock sellers (as the creditors) participated in the fraud, the Court concluded that the surety was not relieved of liability on the bonds on the basis of fraud and, thus, was not entitled to summary judgment. Id.

11

*the representation does not know that such facts are false.* A misrepresentation is intended to deceive where there is intent that the representation be acted upon by the other party.

(Punctuation and footnotes omitted; emphasis in original.) *Petzelt v. Tewes*, 260 Ga. App. 802, 805 (1) (581 SE2d 345) (2003).

[B]ecause fraud is inherently subtle, slight circumstances of fraud may be sufficient to establish a proper case. Proof of fraud is seldom if ever susceptible of direct proof, thus recourse to circumstantial evidence usually is required. Moreover, it is peculiarly the province of the jury to pass on these circumstances showing fraud. Except in plain and indisputable cases, scienter in actions based on fraud is an issue of fact for jury determination.

(Punctuation and footnote omitted.) Id. See also OCGA § 23-2-57 (Although fraud may not be presumed, because there are some circumstances in which direct evidence is not available, it may be established by slight evidence.).

Given the evidence presented, including the admissions in judicio by AOIC's attorney, as recounted above, we conclude that jury issues exist as to whether Thad Dedmon and Payne worked together to defraud Choate; whether AOIC's agent had actual or constructive knowledge of, or participated in, such fraud; and whether AOIC intentionally or recklessly misrepresented to Choate one or more material facts when

12

it issued the bonds. See *Petzelt v. Tewes*, 260 Ga. App. at 805 (1). In addition, the questions of whether Choate exercised reasonable diligence to discover such fraud once it received the bonds, or whether Choate breached some duty to timely notify AOIC of facts that suggested the commission of a fraudulent act, are issues for jury determination. See *Capriulo v. Bankers Life Co.*, 178 Ga. App. 635, 640 (2) (344 SE2d 430) (1986) (A defrauded party "is not bound to exhaust all means at his command to ascertain the truth before relying upon the representations. Ordinarily the question whether the complaining party could ascertain the falsity of the representations by proper diligence is for determination by the jury.") (citation and punctuation omitted).

*Judgment reversed. Phipps, P. J.,  concurs, and Dillard, J., concurs  in judgment only*.

13