**November 18, 2015**

# In the Court of Appeals of Georgia

A15A1629. CHOATE CONSTRUCTION COMPANY v. AUTO-
OWNERS INSURANCE COMPANY.

DILLARD, Judge.

In this suit to impose liability on payment and performance bonds, general

contractor Choate Construction Company ("Choate") appeals the trial court's denial

of partial summary judgment as to its claims for liability on the bonds against surety

Auto-Owners Insurance Company ("AOIC") and its grant of partial summary

judgment to AOIC as to Choate's claims for surety bad faith and attorney fees.[1] On

appeal, Choate argues that the trial court misinterpreted the bonds' principal and the

---

[1] *See Dierkes v. Crawford Orthodontic Care, P.C.*, 284 Ga. App. 96, 98 (1)
(643 SE2d 364) (2007) ("Ordinarily, a party appealing a denial of summary judgment
must first obtain a certificate of immediate review and then apply for review in this
Court. That rule does not apply, however, when an appeal from a denial of summary
judgment is tied to the appeal of an appealable order or judgment." (footnote and
punctuation omitted)).

incorporated subcontract, misinterpreted the parties' intentions (as reflected in the bonds), erred in its application of the rules of contract construction, and erred in finding that AOIC was entitled to summary judgment as to its claims for surety bad faith and attorney fees. For the reasons set forth *infra*, we affirm.

We have previously reviewed this case on appeal from a summary-judgment ruling, and our prior opinion sets forth many of the facts relevant to the instant appeal.[2] But by way of review (and viewing the evidence in the light most favorable to Choate, the nonmoving party),[3] the evidence shows that, in November 2008, Choate entered into a contract with the Board of Regents of the University System of Georgia for the construction of sorority and fraternity houses at the University of Georgia.[4] Thereafter, Choate hired Dedmon Electrical Services ("Dedmon") to perform the electrical work on the project, which was referred to as "Greek Park."[5]

---

[2] *See Choate Const. Co. v. Auto-Owners Ins.* Co., 318 Ga. App. 682 (736 SE2d 443) (2012) (physical precedent only).

[3] *See, e.g.*, *Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 696 (730 SE2d 164) (2012).

[4] *Choate Const. Co.*, 318 Ga. App. at 683.

[5] *Id.*

2

Choate and Dedmon entered into a subcontract, which required Dedmon to obtain payment and performance bonds.[6] Choate provided the bond forms to Thad Dedmon, the sole proprietor of Dedmon, to complete and return to Choate.[7] And prior to beginning work on the project, Dedmon opened an account with, and purchased materials from, Atlanta Electrical Distributors, Inc. ("AED").[8] Thad Dedmon personally guaranteed payment on the account.[9]

In January 2009, Dedmon began work on the project before providing the required bonds to Choate.[10] But a month later, Choate received payment and performance bonds that designated AOIC as the surety, D.E.S. Electrical Contractors ("DES") as the principal, and Choate as the obligee.[11] The bonds provided that the obligee had a contract with the "Bd. of Regents[,] Univ. System of Georgia for the construction of Greek Park,"described the services to be provided by the principal as

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

3

"Electrical Installations," listed the date and value of the subcontract, and incorporated the subcontract by reference.[12] Jacqueline Payne signed the bonds as the owner of DES,[13] and neither Dedmon nor Thad Dedmon were named on the bond.[14] Nevertheless, a Choate employee wrote "Dedmon Electric" at the top of the performance bond.[15] Choate did not confirm that Dedmon and DES were the same company, and it did not contact Thad Dedmon, Payne, DES, Dedmon, or AOIC to inquire about the discrepancy between DES, the name of the principal on the bonds, and Dedmon, the name of the company with which Choate had a subcontract.[16] Instead, Choate allowed Dedmon to continue working on the project based on its

---

[12] *Id.*

[13] Payne, an 84-year-old retired florist and a relative of Thad Dedmon's then wife, testified that he asked "if [she would] sign for some insurance for him," and she signed the bonds solely for his benefit. However, she did not know whether she was signing for health insurance, car insurance, or some other kind of insurance. Payne denied any connection with DES and claimed that she had never heard of the Greek Park project.

[14] *Choate Const. Co.*, 318 Ga. App. at 683.

[15] *Id.*

[16] *Id.*

4

assumption that the bonds covered Dedmon's work.[17] Eventually, Dedmon defaulted on the subcontract with Choate and failed to pay its account with AED.[18]

In a letter dated June 9, 2009, Choate notified Dedmon that it had failed to fulfill its commitments under the subcontract. In addition, Choate informed Dedmon that it had 24 hours to provide sufficient supervision, skilled manpower, materials, tools, and equipment, as well as a written statement of its intentions for completing the work. Choate cautioned that if Dedmon failed to do so, it would be required to reimburse Choate for the cost of completing the electrical work on the project. Choate's project manager forwarded a copy of the letter to AOIC.

In a letter dated June 25, 2009, AOIC responded to Choate and "acknowledg[ed] receipt of a claim against payment and performance bonds issued to [DES]" in conjunction with the Greek Park project. The letter further noted that AOIC was "still investigating this claim," and to assist in that investigation, AOIC requested that Choate provide information regarding the relationship between DES and Dedmon. AOIC's attorney explained that this information was necessary because AOIC had not issued any bonds that required it to respond to a default by Dedmon.

---

[17] *Id.*

[18] *Id.*

5

According to AOIC, Payne applied for the bonds as the owner of DES under the company's "Quick Bond Program," which offers bonds to qualified individuals or contractors for projects that are completed in less than a year and have a total value of less than $250,000 for the work involved.[19] Due to these limitations, AOIC does not require a bond applicant to provide the underlying contract as part of the application because it is "not relevant to the applicant's bondability."[20] Nevertheless, on Payne's application for the bonds, she stated that the underlying contract was with "Choate Construction Company," that the contract was dated "01/17/2009,"[21] and that the contract price was $231,960.64.[22] And under "Job Description," the work was described as "UN of GA/Greek Park/Athens, GA, Installation of electrical components per drawings."[23] The foregoing information included in the application

---

[19] *Id.* at 684.

[20] *Id.*

[21] The subcontract was fully executed on January 19, 2009. It appears that the bonds merely contained a typographical error in referencing January 17, 2009, because there is no subcontract related to the electrical work on the Greek Park project that was executed on that date.

[22] *Choate Const. Co.*, 318 Ga. App. at 684.

[23] *Id.*

6

is the same as the information provided in the subcontract between Choate and Dedmon.[24]

In November 2009, AED filed suit against numerous defendants, including Choate, Dedmon, DES, and AOIC, raising various claims related to Dedmon's failure to pay its account. And Choate asserted cross claims against AOIC, DES, and Dedmon for breach of contract and contractual indemnity under the payment and performance bonds. But ultimately, AED dismissed or settled some claims and assigned its remaining claims to Choate.[25] Thereafter, Choate and AOIC filed cross-motions for summary judgment, and following a hearing, the trial court granted summary judgment to AOIC, finding, *inter alia*, that the bonds unambiguously identified the principal as DES, and that Choate failed to present evidence that DES and Dedmon were the same entity or that Thad Dedmon and Payne were ever involved with the same company.

On appeal, this Court disagreed and reversed the trial court's grant of summary judgment to AOIC.[26] Specifically, we agreed with Choate that the evidence, when

---

[24] *Id.*

[25] *Id.*

[26] *See id.* at 689 (2).

7

viewed in its favor, presented a jury question as to "whether Dedmon and DES were the same company and/or whether Payne acted as an agent or 'on behalf of' Dedmon when she procured the bonds."[27] We further held that jury questions existed as to "whether Thad Dedmon and Payne worked together to defraud Choate; whether AOIC's agent had actual or constructive knowledge of, or participated in, such fraud;[28] and whether AOIC intentionally or recklessly misrepresented to Choate one or more material facts when it issued the bonds."[29] Finally, we concluded that "questions of whether Choate exercised reasonable diligence to discover such fraud

---

[27] *Id.* at 687 (1).

[28] In *Choate*, we noted that during the first summary-judgment hearing, AOIC's attorney was asked how Payne became involved in this matter, and counsel responded, "[t]o be absolutely candid with the Court, the agent [processing the bonds for AOIC] apparently wrote the bonds fraudulently. I assume for the benefit of Thad [ ] Dedmon, the agent had Jacqueline Payne, who was an elderly woman, sign the contracts, pay the premium, and incur the debt. That agent is currently in jail." *Id.* at 686 (1) (punctuation omitted). AOIC's counsel also stated that the bonds were issued based on Payne's credit, that Thad Dedmon did not have any credit, and that AOIC probably would not have issued the bonds if Thad Dedmon had been the applicant. *Id.* As to these statements, we noted that "admissions of fact, made by a party's counsel during a hearing or trial, are regarded as admissions in judicio and are binding on the party." *Id.* (punctuation omitted). And due to these admissions by AOIC's counsel, we concluded, *inter alia*, that jury issues existed as to whether AOIC was complicit in any effort to defraud Choate. *Id.* at 689 (2).

[29] *Choate Const. Co.*, 318 Ga. App. at 689 (2).

8

once it received the bonds, or whether Choate breached some duty to timely notify AOIC of facts that suggested the commission of a fraudulent act, are issues for jury determination."[30]

After remittitur, the trial court granted the parties' consent motion to realign Choate as the plaintiff and restyle the case accordingly. In June 2013, Choate filed a first amended complaint, asserting numerous claims against various defendants, but in relevant part, it asserted claims against AOIC for liability on the performance and payment bonds, surety bad faith, promissory estoppel, negligent misrepresentation, and attorney fees. And thereafter, the parties engaged in extensive discovery, including numerous depositions and affidavits and the exchange of documents.

On June 13, 2014, Choate and AOIC filed cross-motions for summary judgment. Specifically, Choate sought partial summary judgment as to its claims for liability under the payment and performances bonds and its surety bad-faith claim,[31] while AOIC sought summary judgment as to all of Choate's claims. Ultimately, the trial court denied Choate's motion for partial summary judgment and granted AOIC's

---

[30] *Id.*

[31] As to its tort claims, Choate asserted that, if the trial court found that AOIC was not liable under the bonds as a matter of law, those claims should be decided by a jury.

9

motion, in part, as to Choate's claims for surety bad faith and attorney fees. The court denied AOIC's motion as to all of Choate's remaining claims. This appeal by Choate follows.

At the outset, we note that a *de novo* standard of review applies to an appeal from a grant or denial of summary judgment, and we "view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[32] Further, summary judgment is appropriate when the moving party shows that "there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."[33] And a defendant meets this burden when the court is shown that "the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case."[34] Finally, if the moving party satisfies this burden, "the nonmoving party cannot rest on its pleadings, but must point to specific

[32] *Martin*, 316 Ga. App. at 697 (punctuation omitted).

[33] *Garden City v. Herrera*, 329 Ga. App. 756, 758 (766 SE2d 150) (2014). (punctuation omitted).

[34] *Id.* (punctuation omitted).

evidence giving rise to a triable issue."[35] With these guiding principles in mind, we turn now to Choate's specific claims of error.

1. In three separate enumerations of error, Choate argues that the trial court erred in denying its motion for partial summary judgment as to its claims for liability on the payment and performance bonds. Specifically, Choate contends that the trial court misinterpreted the bonds, the incorporated subcontract, and the intentions of the parties. Choate also argues that the court erred in its construction of the contract. However, because this Court previously held that several genuine issues of material fact existed regarding Choate's bond-liability claims, we must first consider whether a grant of summary judgment as to those claims is barred by the law-of-the-case doctrine.[36]

In Georgia, the law-of-the-case rule has "formally been abolished except as it applies to rulings by one of the appellate courts; they are binding in all subsequent

---

[35] *Id.* (punctuation omitted).

[36] On appeal, Choate does not address whether the law-of-the-case doctrine applies to its bond-liability claims generally, but it asserts that our specific conclusion that the bonds referenced and incorporated the subcontract *is* law of the case.

11

proceedings."[37] Indeed, OCGA § 9-11-60 (h) provides, in relevant part, that "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." Nevertheless, there is an exception to the rule where "the evidentiary posture of the case in the trial court changes subsequent to the appellate decision."[38] And the evidentiary posture of a case "changes so as to bar application of the law-of-the-case rule in two different situations."[39] First, the evidentiary posture of a case changes when a new issue that the appellate court has not addressed is raised by amended pleadings or otherwise.[40] Second, the evidentiary posture of a case changes when "the original evidence submitted is found to be insufficient, and the deficient evidence is later supplemented."[41]

---

[37] *Guthrie v. Wickes*, 295 Ga. App. 892, 895 (3) (673 SE2d 523) (2009) (punctuation omitted); *accord Davis v. Silvers*, 295 Ga. App. 103, 105 (670 SE2d 805) (2008).

[38] *Davis*, 295 Ga. App. at 105; *accord Guthrie*, 295 Ga. App. at 895 (3).

[39] *Davis*, 295 Ga. App. at 106 (punctuation omitted).

[40] *Id.*

[41] *Id.* (punctuation omitted); *accord Guthrie*, 295 Ga. App. at 895 (3).

12

As previously noted, in *Choate*, we reversed the trial court's grant of summary judgment to AOIC on Choate's bond-liability claims, finding that there were several genuine issues of material fact that precluded summary judgment.[42] Specifically, as to AOIC's potential liability on the payment and performance bonds, we concluded that there were jury questions as to whether (1) Dedmon and DES were the same company, (2) Payne acted as an agent or "on behalf of" Dedmon when she procured the bonds, (3) Thad Dedmon and Payne worked together to defraud Choate, (4) AOIC's agent had actual or constructive knowledge of, or participated in, such fraud, (5) AOIC intentionally or recklessly misrepresented material facts to Choate when it issued the bonds, (6) Choate exercised reasonable diligence to discover such fraud once it received the bonds, and (7) Choate breached some duty to timely notify AOIC of facts that suggested the commission of a fraudulent act.[43]

After remittitur, Choate was realigned as the plaintiff, filed its first amended complaint, and later moved for partial summary judgment as to its bond-liability claims. Nevertheless, as to those specific claims, Choate raised no new issues before the trial court that this Court had not already addressed, either explicitly or implicitly.

---

[42] *See Choate*, 318 Ga. App. at 689 (2).

[43] *See id.* at 687 (1), 689 (2).

13

For example, Choate primarily argues that it is entitled to summary judgment because DES and Dedmon are the same company and the bonds unambiguously provided that AOIC intended to insure Dedmon's work on the Greek Park project. However, this Court has already considered this argument, reviewed the bonds and the subcontract at issue, and determined that there were numerous material factual disputes regarding whether AOIC is liable to Choate under the bonds. And in so holding, we necessarily concluded that the bonds were ambiguous as to whether the parties intended for AOIC to ensure Dedmon's electrical work on the Greek Park project.[44] Thus, because Choate has not raised any new issues that have not already been addressed by this Court, it cannot show that the evidentiary posture of the case has changed on that basis.[45]

---

[44] *See Citrus Tower Boulevard Imaging Ctr., LLC v. Owens*, 325 Ga. App. 1, 7-8 (2) (752 SE2d 74) (2013) (noting that if an ambiguity in a contract remains after applying the rules of contract construction, "then the meaning of the ambiguous language and the parties' intentions are issues for a jury").

[45] *See Davis*, 295 Ga. App. at 106 (noting that one exception to the law-of-the-case rule is when a new issue not previously addressed by an appellate court is raised by amended pleadings or otherwise).

Further, although extensive additional discovery was conducted after our first review of this case, Choate has not shown, *or even argued*, that "the original evidence submitted [was] found to be insufficient, and the deficient evidence [was] later supplemented."[46] Indeed, Choate cites to no new evidence that supplements the original record in such a way that resolves any of the aforementioned material factual disputes in its favor. If anything, the numerous depositions taken and other evidence submitted after remittitur serve only to confirm that there are indeed genuine issues of material factual that preclude summary judgment. For example, we previously concluded that there is a genuine issue of material fact as to whether Dedmon and DES are different entities.[47] In his deposition, which was not before this Court in

---

[46] *Id.* (punctuation omitted).

[47] The dissent suggests that because our prior opinion addressed whether AOIC, rather than Choate, was entitled to summary judgment, we are not barred from reconsidering the same factual disputes that were at issue in the prior appeal. Specifically, the dissent uses this rationale as a basis for determining that it is undisputed that Dedmon and DES are the same company, and therefore, it is irrelevant which company name was used to procure the bonds. However, we have previously (and explicitly) held that "[w]e agree with Choate's contention that the evidence, when viewed in its favor, *presents jury questions as to whether Dedmon and DES were the same company* and/or whether Payne acted as an agent or 'on behalf of' Dedmon when she procured the bonds." *See Choate*, 318 Ga. App. at 687 (1) (emphasis supplied). We fail to see how the fact that Choate, rather than AOIC, is now seeking summary judgment somehow resolves that *factual* dispute in Choate's favor. Indeed, regardless of which party moves for summary judgment, there is either

15

*Choate*, Thad Dedmon testified that Dedmon and DES were two separate companies. However, he was the sole proprietor of both companies, through which he performed the same type of electrical work, and in one correspondence, he updated Choate with the same new contact information for both DES and Dedmon, stating "*[o]ur* new contact info. is located below." Moreover, it was undisputed that Thad Dedmon used the Dedmon trade name in the subcontract with Choate, which we previously held was referenced and incorporated into the bonds, but the bonds bore the DES trade name and purported to ensure electrical work for a project called "Greek Park." Under these particular circumstances, Choate simply cannot show that the evidence regarding the relationship between DES and Dedmon has been supplemented in any meaningful way.[48]

---

a material factual dispute between the parties or there is not. And the dissent has pointed us to no new evidence that was not previously before this Court that changes the evidentiary posture of this case. As a result, our previous decision in *Choate* bars us from reconsidering whether there is a material factual dispute as to whether Dedmon and DES are the same or different entities.

[48] *See IH Riverdale, LLC v. McChesney Capital Partners, LLC*, 292 Ga. App. 841, 844 (666 SE2d 8) (2008) ("Given the similarity of the arguments and evidence presented in the current and previous appeals, the evidentiary posture of the case has not changed by the addition of the [new evidence]."); *Davis*, 295 Ga. App. at 105-06 (holding that the law-of-the-case rule barred the parties from re-litigating a particular

In addition, Choate identifies no evidence that resolves the jury questions of whether Thad Dedmon and Payne worked together to defraud Choate, whether an AOIC representative was complicit in any such fraud, or whether Payne signed the bonds as an agent for Dedmon. Although Payne agreed to sign the bonds at Thad Dedmon's request, she testified that she had no idea what type of insurance he was seeking, she had no connection to DES, and she had never heard of the Greek Park project. And as we noted in *Choate*, AOIC's own attorney admitted that the insurance agent involved identified Payne as the principal of DES because Thad Dedmon, the actual owner, lacked the credit to qualify for the bonds.[49] But in his deposition, the AOIC agent testified that he believed that Thad Dedmon and Payne were joint owners of DES, that he received all of the information for the bond applications from Thad Dedmon, and that Thad Dedmon provided him with misinformation. Nevertheless, the bond application itself identified Payne as the 100 percent owner of DES. Jury issues still exist, then, regarding who, if anyone, was involved in an effort to defraud Choate.

claim when we previously held that there were no genuine issues of material fact regarding that claim and the affidavits that they submitted after our decision did not address the critical issue at hand).

[49] *See Choate*, 318 Ga. App. at 686 (1).

17

In sum, Choate has not shown that the evidentiary posture has changed such that the law-of-the-case doctrine does not apply. As a result, our prior holding in *Choate*—that several genuine issues of material fact remain as to Choate's claims for liability on the payment and performance bonds—is law of the case, and the trial court did not err in denying Choate's motion for partial summary judgment on those claims.[50] Thus, we need not address each of Choate's specific claims of error regarding that ruling.

2. Choate also argues that the trial court erred in granting summary judgment to AOIC as to its claim for surety bad faith when undisputed evidence shows that AOIC denied liability on the bonds with full knowledge of Dedmon's scheme to obtain the bonds and when AOIC was responsible for any ambiguity in the bonds. We disagree.

---

[50] *See Bruce v. Garges*, 259 Ga. 268, 270 (2) (379 SE2d 783) (1989) (holding that the law-of-the-case rule applied because "the same parties and issues are involved and the evidentiary posture of the case remains the same"); *IH Riverdale, LLC*, 292 Ga. App. at 844 (holding that the a prior ruling of this Court was law of the case because, *inter alia*, the arguments and evidence presented in the current and previous appeals were similar); *Davis*, 295 Ga. App. at 105-06 (holding that the law-of-the-case rule applied to a summary-judgment ruling on a particular claim when we previously held that there were no genuine issues of material fact regarding that claim and the evidence that was submitted after our decision did not address the critical issue at hand).

OCGA § 33-4-6 (a) provides:

In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney[ ] fees for the prosecution of the action against the insurer.

And to support a cause of action under OCGA § 33-4-6, "the insured bears the burden of proving that the refusal to pay the claim was made in bad faith."[51] Moreover, a defense going far enough to show reasonable and probable cause for making it would "vindicate the good faith of the company as effectually as would a complete defense to the action."[52] Indeed, penalties for bad faith are not authorized where "the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact."[53]

---

[51] *Assurance Co. of Am. v. BBB Serv. Co.*, 259 Ga. App. 54, 58 (2) (576 SE2d 38) (2002) (punctuation omitted).

[52] *Id.* (punctuation omitted).

[53] *Id.* (punctuation omitted).

19

In its first amended complaint, Choate asserted a new claim against AOIC for surety bad faith, arguing that AOIC "stubbornly refused to meet its obligations under the [b]onds despite clear and undisputed evidence of its liability under the [b]onds." But as discussed in Division 1 *supra*, there are genuine issues of material fact as to whether Choate is entitled to coverage under the payment and performance bonds. Thus, because AOIC had reasonable grounds to contest Choate's claims by asserting that it issued bonds to DES and Payne, as opposed to Dedmon, bad-faith penalties are not warranted.[54]

3. Finally, Choate argues that the trial court erred in granting summary judgment to AOIC on its claim for attorney fees. This claim likewise lacks merit.

---

[54] *See Allstate Ins. Co. v. Smith*, 266 Ga. App. 411, 413 (2) (597 SE2d 500) (2004) (holding that the insurer's grounds for refusing coverage were reasonable when there was a genuine conflict over whether the insurance claim was legitimate); *Assurance Co. of Am.*, 259 Ga. App. at 58 (2) (holding that bad-faith penalties were unauthorized when the insurance company had reasonable grounds to contest the insured's claims). Notably, in this case, it is not entirely clear that AOIC ever actually denied Choate's claim for coverage before this litigation ensued. After Choate notified AOIC that Dedmon was facing default if it did not comply with certain directives within 24 hours, AOIC merely responded that it was still "investigating the claim," and it requested information to aid in that investigation, which Choate failed to provide.

Choate first asserts that it is entitled to seek attorney fees because AOIC acted in bad faith when it denied liability on the bonds. But given our holding in Division 2 *supra* (*i.e.,* that AOIC had a reasonable basis for contesting liability and did not do so in bad faith), Choate is not entitled to attorney fees under the surety bad-faith statute.[55] Choate also argues that, in the context of its negligent-misrepresentation claim, it is entitled to reasonable attorney fees under OCGA § 13-6-11 because AOIC has been stubbornly litigious.[56] But when a bona fide controversy clearly exists between the parties, "the defendant is entitled to judgment as a matter of law on the plaintiff's claim for attorney fees and expenses of litigation based on stubborn litigiousness or the causing of unnecessary trouble and expense."[57] Because, as

---

[55] *See* OCGA § 33-4-6 (a) (providing that when a surety denies coverage for a loss covered by an insurance policy in bad faith, the insured is entitled to, *inter alia*, reasonable attorney fees).

[56] *See* OCGA § 13-6-11 ("The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.").

[57] *Horton v. Dennis*, 325 Ga. App. 212, 217 (750 SE2d 493) (2013); *see also Brito v. Gomez Law Grp.*, LLC, 289 Ga. App. 625, 628 (2) (a) (658 SE2d 178) (2008) ("As a matter of law, stubborn litigiousness cannot exist if there is a genuine dispute

21

discussed *supra*, there are genuine disputes between the parties that must be decided by a jury, Choate is not entitled to attorney fees under OCGA § 13-6-11 as a matter of law, and the trial court did not err in granting summary judgment to AOIC on that claim.

For all of the foregoing reasons, we affirm the trial court's denial of Choate's motion for partial summary judgment and its partial grant of summary judgment to AOIC as to Choate's claims for surety bad faith and attorney fees.

*Judgment affirmed. Barnes, P. J., Ellington, P. J., Phipps, P. J., Ray and McMillian, JJ., concur. McFadden, J., dissents.*

---

between the parties. And when the evidence shows the existence of a genuine factual dispute or legal dispute as to liability, the amount of damages, or any comparable issue, then attorney fees are not authorized." (footnote and punctuation omitted)).

A15A1629. CHOATE CONSTRUCTION COMPANY v. AUTO-
    OWNERS INSURANCE COMPANY.

MᴄFᴀᴅᴅᴇɴ, Judge, dissenting.

I respectfully dissent. This case concerns the enforceability of a one-page subcontractor's performance bond. The surety, appellee Auto-Owners Insurance Company, has identified two purported deficiencies in the bond which, it argues, excuses it from paying the obligee, appellant Choate Construction Company. Neither argument has merit.

Because there has been an earlier appeal in this case, we must first consider the application of the law of the case rule. See § 9-11-60 (h). But contrary to the majority, I would hold that it is not applicable. "The 'law of the case' has been defined as a controlling legal rule established by a previous decision between the same parties in the same case." *Modern Roofing & Metal Works v. Owen*, 174 Ga. App. 875, 876 (1) (332 SE2d 14) (185) (citation & punctuation omitted). Accordingly, the law of the

case rule applies "only when the same issue has been actually litigated and decided." *State v. Mizell*, 288 Ga. 474, 478 (3) (705 SE2d 154) (2010) (citations omitted). "Where [a] second motion for summary judgment is based on matters not involved in the decision on the first motion, 'the law of the case' is not involved." *Suggs v. Brotherhood of Locomotive Firemen & Enginemen*, 106 Ga. App. 563, 564 (2) (127 SE2d 827) (1962) (citations and punctuation omitted).

Here, the first motion for summary judgment was filed by surety Auto-Owners; the second was filed by obligee Choate. Our earlier opinion dealt with the first motion and held that Auto-Owners was not entitled to summary judgment; it contained no analysis of whether genuine issues of material fact existed that would preclude summary judgment to Choate. I disagree with the majority's assertion that "regardless of which party moves for summary judgment, there is either a material factual dispute between the parties or there is not." Opposing parties' arguments for summary judgment are not necessarily mirror images, and a material fact sufficient to defeat summary judgment for one party may have no bearing on another party's entitlement to summary judgment.

In this case, for example, the finding in our earlier opinion that a jury question existed "as to whether Dedmon [Electric Services] and DES were the same company,"

see *Choate*, 318 Ga. App. at 687 (1), precluded summary judgment for Auto-Owners on one of its arguments. But the existence of that jury question does not preclude summary judgment for Choate. As discussed below, there is no dispute that both companies were sole proprietorships and that Thad Dedmon was the sole proprietor of each. And, as discussed below, Thad Dedmon's status as sole proprietor is the issue material to Choate's motion for summary judgment. Whether his two sole proprietorships were the same company or different companies is immaterial.

Although this court's first opinion does identify several factual questions, it does not address whether any of those factual questions are material to the issue now before us: whether Choate is entitled to summary judgment. Even if a ruling on the existence of genuine issues of fact material to Choate's entitlement to summary judgment could be implied in the earlier opinion, our Supreme Court has "decline[d] to expand the law of the case rule of OCGA § 9-11-60 (h) to encompass an 'implied' ruling[.]" *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 186 n. 5 (674 SE2d 894) (2009). Consequently, the law of the case rule does not apply, and there is no need to parse out the post-remand evidence from the pre-remand evidence.

I therefore turn to the purported deficiencies in the performance bond. The principal on the bond is subcontractor Thad Dedmon, a sole proprietor who operated

3

under the trade names Dedmon Electric Services (the entity named in the contract with Choate) and D. E. S. Electrical Contractors (the entity named in the bond with Auto-Owners). The subcontractor defaulted, generating losses apparently greater than the amount of the bond. Auto-Owners, has refused to pay on the basis two alleged deficiencies: first that the bond identifies the principal by one of his two trade names while the subcontract identifies him by the other; and second that the signature on the bond on behalf of the principal/subcontractor is that of Jacqueline Payne, Thad Dedmon's elderly relative, who had no other involvement in the business.

Auto-Owners points first to the discrepancy between the trade names on the subcontract and on the bond. But that discrepancy does not excuse its failure to pay. An unincorporated sole proprietorship has no existence independent of the proprietor. *Brand v. Southern Employment Svc.*, 247 Ga. App. 638, 639 (545 SE2d 67) (2001). "A trade name such as that which denominates the sole proprietorship is merely a name assumed or used by a person recognized as a legal entity. . . . [A] trade name is nothing more than the alter ego of the individual." *Miller v. Harco Nat. Ins. Co.*, 274 Ga. 387, 391 (3) (554 SE2d 848) (2001) (citations and punctuation omitted). The evidence establishes without dispute that the subcontract and the bond refer to the

4

same general contractor (Choate), the same subcontractor (Thad Dedmon), and the same project.

Auto-Owners points next to the signature of the subcontractor's elderly relative, Payne, suggesting that it constituted fraud. It does appear that Thad Dedmon lacked the credit rating necessary to secure a bond and that, in deciding to issue the bond, Auto-Owners relied on Payne's credit rating. But the bond does not reflect any such reliance. The bond form has spaces for the name and title of the signatories, but neither Payne nor Auto-Owners's agent provided a title. Obligee Choate drafted the bond form, and it contains no language that provides Auto-Owners a remedy for frustration of its reliance interest.

Auto-Owners goes on to argue that Choate had a duty to investigate the use of different trade names on the subcontract and the bond and to investigate the role of the subcontractor's elderly relative. But that argument is derivative of the arguments rejected above.

For these reasons, we should reverse the denial of summary judgment to Choate on its claim that Auto-Owners is liable under the bond. As to the issues of bad faith and attorney fees, we should remand for further consideration in light of the reversal.